**FILED**

**JUL 07 2006**

**ORDERED PUBLISHED**

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-05-1268-KPaB |
| ) | |
| NATHAN JOHNSON, ) | Bk. No.   LA 05-14975-ER |
| ) | |
| Debtor. ) | |
| _____) | |
| NATHAN JOHNSON, ) | |
| ) | |
| Appellant, ) | |
| ) | OPINION |
| v. ) | |
| ) | |
| TRE HOLDINGS LLC, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on May 18, 2006
at Pasadena, California

Filed - July 7, 2006

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding.

Before: KLEIN, PAPPAS, and BRANDT, Bankruptcy Judges.

KLEIN, Bankruptcy Judge:

Under 11 U.S.C. § 362(a), a bankruptcy petition "operates as a stay" of certain actions against property of the debtor and of the estate. The underlying question is whether a court nevertheless has inherent authority to preempt this statutory "automatic stay" for future bankruptcy cases by way of a stay-relief order that purports to have "in rem" effect. Because we conclude that a court does not have inherent (as opposed to statutory) authority to trump future automatic stays with an "in rem" order, the foreclosure sale giving rise to this dispute was void ab initio.

We REVERSE the order declining to exercise jurisdiction over appellant's claim of stay violation and REMAND for further proceedings, expressing no view regarding the merits of the parties' mutual recriminations or whether the circumstances of appellant's facially dubious bankruptcy strategy would warrant annulling the automatic stay.

## FACTS

Appellant Nathan Johnson filed a chapter 13 case on March 14, 2005. His property interests included an undivided one-half interest in real property in Los Angeles, California, that he had acquired by a grant deed recorded one hour before filing the bankruptcy. The grantor, Turmeko Properties, Inc. ("Turmeko"), had a 100 percent interest at the time of transfer and contends the consideration was securing repayment of a prior loan.

Without seeking relief from the automatic stay in Johnson's

bankruptcy case, TRE Holdings, LLC ("TRE"), caused a trustee's (nonjudicial foreclosure) sale to be held on March 21, 2005, at which TRE purchased the property.

On April 8, 2005, Johnson moved for stay-violation sanctions under § 362(h) and an order vacating the trustee's sale.

TRE responded that it was entitled to ignore the automatic stay by the terms of a stay relief order entered in the earlier bankruptcy of Maureen Grimes, who then owned an undivided one-half interest with Turmeko. That order purportedly granted stay relief for 180 days in any bankruptcy involving the property:

> This order is binding and effective in any bankruptcy case commenced by or against any successors, transferees, or assignees, of the above-named Debtor(s) for a period of 180 days from the hearing of the Motion . . . upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

In re Grimes, No. LA 04-35666 (Bankr. C.D. Cal. Jan. 6, 2005).

TRE contended that Johnson was successor to the Grimes one-half interest that had been transferred back to Turmeko. Johnson and Turmeko countered that he received the <u>other</u> one-half interest, which Turmeko owned throughout the Grimes bankruptcy.

TRE also asserted that the foreclosure sale had been delayed by multiple bankruptcy filings involving transfers of fractional interests in the property for no consideration.

Turmeko countered with assertions (which the procedural posture of this appeal requires us to accept as true) that: the consideration for the transfer to Johnson was to secure a prior loan; TRE defied a state-court order to provide a payoff amount for purposes of refinance for so long that a loan commitment to Turmeko expired; and TRE ultimately made a materially inflated

1  payoff demand for nearly triple the amount borrowed.
2      The bankruptcy court dismissed the case for procedural
3  defects before Johnson's stay-violation motion was scheduled to
4  be heard.  All pending motions were dismissed as moot.
5      The court later revived the stay violation motion on
6  Johnson's application, which pointed out that stay violation
7  disputes are not necessarily mooted by the dismissal of a case.
8      The court ultimately denied the motion after a hearing,
9  concluding that it lacked jurisdiction and, to the extent it had
10 discretion to take jurisdiction, declining to exercise any such
11 discretion.  In doing so, the court reasoned that the motion
12 sought "new relief" in a dismissed case.
13     Johnson timely appealed.
14
15                         JURISDICTION
16     The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334
17 and 157(b).  We have jurisdiction under 28 U.S.C. § 158(a)(1).
18
19                           ISSUES
20     1.  Whether a bankruptcy court is entitled to decline to
21 exercise jurisdiction over a dispute regarding the automatic stay
22 imposed by 11 U.S.C. § 362.
23     2.  Whether an order granting relief from stay in a previous
24 bankruptcy case operated to preclude the automatic stay from
25 arising in the instant case in regards to the same property.
26
27                       STANDARDS OF REVIEW
28     The existence of subject-matter jurisdiction, the scope of a

1  bankruptcy court's inherent authority, and the scope of its power
2  to act under 11 U.S.C. § 105, are questions of law that we review
3  de novo. Yadidi v. Herzlich (In re Yadidi), 274 B.R. 843, 847
4  (9th Cir. BAP 2002) (court authority); Davis v. Courington (In re
5  Davis), 177 B.R. 907, 910-11 (9th Cir. BAP 1995) (jurisdiction).
6      Since the court denied the motion on jurisdictional grounds
7  without reaching the merits, we must assess the facts in the
8  light most favorable to appellant. Fed. R. Civ. P. 12(b)(6);
9  Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006).

10                              DISCUSSION
11
12      Let there be no mistake. Appellant is on thin ice because
13  participating in a strategy of transferring fractional interests
14  for the purpose of filing successive bankruptcy cases that are
15  then not completed is unacceptable and may constitute a crime.
16  Conversely (accepting, as we must, factual allegations about
17  appellee in the light favorable to appellant), a creditor should
18  not be permitted to sabotage a refinance so that it can
19  foreclose. Our task, however, is to focus on the law, even as
20  between unsympathetic parties.
21      Although Congress, in the 2005 Bankruptcy Amendments,
22  addressed the problem of repetitive bankruptcies connected with
23  transfers of real property by enacting a new exception to the
24  automatic stay for "in rem" orders that meet specific criteria,[1]

---

25      [1] As set forth in part II-B of this opinion, Congress
26  created a new automatic stay exception as § 362(b)(20), which,
    with an escape clause for changed circumstances or other good
27  cause, excepts from the automatic stay real property lien
    enforcement actions for a period of two years after the entry of
28  an order in a prior case that complies with new § 362(d)(4),
                                                      (continued...)

5

1  those amendments do not apply to this appeal.
2      Nor, in any event, would the "in rem" order in this instance
3  pass muster under the 2005 Amendments. There was no finding of
4  an intent to hinder, delay, or defraud creditors and no
5  opportunity to establish changed circumstances or other cause.
6      Hence, we must decide whether, in the absence of (or
7  compliance with) the newly-enacted scheme, the "in rem" feature
8  of the Grimes stay relief order entitled TRE to ignore the
9  automatic stay in Johnson's case. This boils down to the
10 question of the inherent authority of the bankruptcy court.
11
12                              I
13     The basic law regarding automatic stay violations in this
14 circuit straightforwardly renders acts in violation of the stay
15 void ab initio.
16
17                              A
18     An automatic stay is created upon the filing of the case.
19 11 U.S.C. § 362(a). A sale in violation of the automatic stay is
20 void ab initio. Schwartz v. United States (In re Schwartz), 954
21 F.2d 569, 571 (9th Cir. 1992). This is true even if the case is
22 later dismissed as a bad faith filing. 40235 Washington St.
23 Corp. v. Lusardi, 329 F.3d 1076, 1080 (9th Cir. 2003), cert.
24 denied, 540 U.S. 983 (2003). After the case is dismissed, the

---

[1](...continued)
which must be predicated upon specific findings that the filing
of the petition in the prior case was part of a scheme to delay,
hinder, or defraud creditors that involved either transfer of all
or fractional ownership without permission or the filing of
multiple bankruptcy cases. 11 U.S.C. §§ 362(b)(20) & (d)(4)
(2006).

6

court may annul the automatic stay, thereby retroactively ratifying an act otherwise violative of the stay. <u>Id.</u>, at 1080 n.2; <u>Davis</u>, 177 B.R. at 911. The court may also impose sanctions for stay violations, even if it annuls the stay. <u>Williams v. Levi (In re Williams)</u>, 323 B.R. 691, 702 (9th Cir. BAP 2005).

Thus, since the sale at issue occurred while the stay was in effect and occurred without the benefit of relief from stay, the sale is void unless the "in rem" feature of the Grimes order dictates a contrary result.

B

The court's conclusion that it was being asked to grant "new relief" over which it would decline to exercise jurisdiction was incorrect as to the nature of the relief sought and as to its ability to decline to exercise jurisdiction.

1

No order vacating the sale was required because, as a matter of law, the sale was void, unless and until the bankruptcy court acted to annul the automatic stay. Hence, the relief requested in the form of declaring that the sale was void was not "new" relief. Rather, it was relief that automatically followed from the existence of the stay violation. <u>Lusardi</u>, 329 F.3d at 1080.

2

Similarly, it is settled that a bankruptcy court continues to have jurisdiction to annul the stay and to impose sanctions for stay violations. <u>Lusardi</u>, 329 F.3d at 1080; <u>Davis</u>, 177 B.R.

7

Case 2:05-bk-14975-ER    Doc 73    Filed 07/17/06    Entered 07/17/06 17:07:06    Desc
Main Document    Page 8 of 17

907, 911 (9th Cir. BAP 1995); Williams, 323 B.R. at 702.

Nor can the court's expression of refusal to exercise any discretion that it may have to "extend jurisdiction" be construed as discretionary abstention under 28 U.S.C. § 1334(c)(1).[2] The court made none of the findings necessary to establish a predicate — interest of justice, comity with state courts, or respect for state law — for such abstention.

Basic federal jurisdiction jurisprudence requires that a court with jurisdiction must exercise such jurisdiction when asked to do so. See, e.g., Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). This common-law rule applies in bankruptcy, albeit that it has been softened by a statutory grant of broad bankruptcy abstention authority. Swift v. Bellucci (In re Bellucci), 119 B.R. 763, 774-77 (Bankr. E.D. Cal. 1990) (nonstatutory abstention doctrines apply in bankruptcy); 11 U.S.C. § 305 (abstention from entire case); 28 U.S.C. § 1334(c) (abstention from bankruptcy proceedings).

Where a bankruptcy court has jurisdiction but is not in a position to avail itself of statutory or nonstatutory abstention, it must exercise its jurisdiction. An automatic stay violation dispute is such an instance. Hence, the bankruptcy court erred

---

[2] The discretionary abstention statute provides:

>    (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1) (2006) (reference to chapter 15 added by 2005 Amendments).

8

when it ruled that it would decline to exercise jurisdiction.

## II

The question becomes whether the "in rem" feature of the Grimes stay relief order entitled TRE to ignore the automatic stay in the Johnson bankruptcy case.

TRE contends that the automatic stay either did not exist or had been vacated in advance of the filing of the case by the bankruptcy judge in the Grimes case, whose order stated that it was "binding and effective in any bankruptcy case commenced by or against successors, transferees, or assignees of Grimes for a period of 180 days from the hearing of the motion upon recording a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law."

The threshold question is whether the Grimes bankruptcy court had authority to outlaw the statutory automatic stay in a future bankruptcy case. Since we answer the initial question in the negative, we need not parse the details of the actual transaction so as to be able to answer the question whether the terms of the Grimes "in rem" order actually covered Johnson.

### A

The narrow question is whether the "in rem" order entered by the Grimes bankruptcy court was effective in the later Johnson bankruptcy case to trump the provision in § 362(a) that "a petition filed . . . operates as a stay, applicable to all entities" of acts against the debtor or property of the estate.

The foundational proposition is that nothing in § 362, as it

9

existed before October 17, 2005, expressly authorized an "in rem" stay relief order.

The nature of an automatic stay determination is that it is merely an adjustment of a statutory injunction in which the court does not definitively determine interests in property. 11 U.S.C. § 362.

Under the Federal Rules of Bankruptcy Procedure, the determination of interests in property requires an adversary proceeding. FED. R. BANKR. P. 7001(2). Thus, in a relief from stay motion that is a Rule 9014 contested matter, not a Rule 7001 adversary proceeding, the bankruptcy court is not authorized by the rules of procedure to enter an "in rem" order that determines interests in property. GMAC Mortgage Corp. v. Salisbury (In re Loloee), 241 B.R. 655, 661-62 (9th Cir. BAP 1999).

When bankruptcy courts have entered "in rem" orders they usually have based their authority to enter such orders for in rem relief pursuant to 11 U.S.C. § 105. E.g., County of Fresno v. Golden State Capital Corp. (In re Golden State Capital Corp.), 317 B.R. 144, 149 (Bankr. E.D. Cal 2004); Kimberly L. Nelson, Abusive Filings: Can Courts Stop the Abuse within the Confines of the Bankruptcy Code?, 17 BANKR. DEV. J. 331, 346-47 (2000).

Bankruptcy Code § 105, however, does not provide such authority. We have previously explained that § 105 is not a roving commission to do equity or to do anything inconsistent with the Bankruptcy Code. Yadidi, 274 B.R. at 848.

The nature of the jurisprudential foundation of § 105 is a complex subject that has proven difficult to corral. Professors Nickles and Epstein argue that § 105 adds nothing as a source of

10

supplemental law and is merely a recognition of the nonstatutory inherent, common-law powers to interpret statutes interstitially and of equitable powers that already repose in courts. Thus, they assert that any construction of § 105 as an independent source of authority to make law risks crossing the fuzzy boundary between legitimate judicial interpretation and unconstitutional exercise of legislative powers. Steve H. Nickles & David G. Epstein, Another Way of Thinking About Section 105(a) & Other Sources of Supplemental Law Under the Bankruptcy Code, 2000 CHAPMAN L. REV. 7, 9-10 (2000); Yadidi, 274 B.R. at 848.

Regardless of the ultimate outcome of the debate about the nature of § 105 and the ultimate demarcation of the true perimeter of legitimate exercise of whatever authority it recognizes, we adhere to the limiting propositions that § 105 is not a roving commission to do equity or to do anything inconsistent with the Bankruptcy Code. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) (equity powers); Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss), 67 F.3d 1394, 1402 (9th Cir. 1995); Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.), 885 F.2d 621, 624-26 (9th Cir. 1989); Bear v. CoBen (In re Golden Plan of Cal., Inc.), 829 F.2d 705, 713 (9th Cir.1986); Yadidi, 274 B.R. at 848.

Moreover, the language of § 105 fixes the limit at measures "necessary or appropriate to carry out the provisions of" the Bankruptcy Code, which is where our inquiry begins. Golden Plan, 829 F.2d at 713; Yadidi, 274 B.R. at 848.

Considering that the § 105 limit is to measures necessary or appropriate to carry out "the provisions of the Bankruptcy Code,"

11

the fundamental problem is that it is difficult to characterize an "in rem" order as carrying out the provisions of the Bankruptcy Code. An "in rem" order is more than filling in the interstices, which § 105 does not authorize. Cf. Yadidi, 274 B.R. at 848. It follows that decisions grounding "in rem" orders on § 105 are not persuasive.

In the absence of a statutory basis for an "in rem" order, the question of the binding effect of an order like the Grimes order is a topic in the federal common law of claim and issue preclusion. The basic rules are set forth in Restatement (Second) of Judgments §§ 30, 43-44, 54. See generally, Christopher Klein, et al., Principles of Preclusion & Estoppel in Bankruptcy Cases, 79 Am Bankr. L.J. 839 (2005).

In an adversary proceeding to determine an interest in property, the court arguably would have authority to issue an order that would operate as an "in rem" order under the rules of res judicata. Here, however, there is no adversary proceeding and no adversary proceeding judgment that might have claim or issue preclusive effect. It follows that the Grimes order does not have binding effect on nonparties and is not conclusive as to interests in the property.

B

Our analysis is informed by what Congress did in 2005, when it enacted an amendment to § 362 that authorizes a stay relief order to have effect in other cases when the court determines that the filing of the petition was part of a scheme to hinder, delay, or defraud creditors. The new § 362(d)(4) provides:

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either-

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. 362(d)(4)(2006).

Such an order is effectuated in a subsequent bankruptcy case by qualifying for a statutory exception to the automatic stay in the later case pursuant to the new § 362(b)(20):

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay —

(20) under subsection (a), of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing[.]

11 U.S.C. § 362(b)(20)(2006).

It is apparent that the Grimes "in rem" order would not

13

surmount the hurdles erected by new §§ 362(b)(20) and (d)(4). The Grimes court did not determine that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors. Nor, in either the Grimes or the Johnson court, was there an opportunity to establish changed circumstances or other cause. In other words, even under the post-2005 regime, the Grimes order would not be effective in the Johnson case.

The structure of what Congress deemed it necessary to do in the post-2005 regime embodied by §§ 362(b)(20) and (d)(4) confirms the validity of our conclusion that the pre-2005 Code did not authorize an "in rem" stay relief order to trump the automatic stay in future cases.

There is no dysfunction in concluding that the Grimes order did not trump the initiation of the stay upon the commencement of the Johnson bankruptcy case and did not excuse TRE from obtaining relief from stay. In addition to the possibility of having the stay annulled as suggested by the Ninth Circuit in Lusardi, the Bankruptcy Code has always included an emergency stay relief provision at § 362(f), permitting relief without a hearing where needed to avoid irreparable damage. TRE made no attempt to avail itself of this procedure.

It follows that the Grimes order did not entitle TRE to ignore the automatic stay in the Johnson bankruptcy case.[3]

---

[3] Since the order is not effective in the first instance, we need not reach the question of whether the Grimes "in rem" order would have been actually effective in this instance. The answer to that question would depend upon whether Nelson, as transferee of Turmeko, was a "successor" of Grimes. We note, however, that there is ambiguity as to which 50 percent interest was transferred to Johnson. The transferor, Turmeko, says that
(continued...)

14

CONCLUSION

The court applied an incorrect legal standard when it reasoned that it lacked jurisdiction over the stay violation dispute. Since the Grimes order did not entitle TRE to ignore the automatic stay, the TRE foreclosure sale, in the current procedural posture of the dispute, was void ab initio as a matter of law. On remand, the court will be entitled to consider all available measures, including annulling the automatic stay. Accordingly, we REVERSE and REMAND.

---

[3](...continued)
it was the 50 percent that was not owned by Grimes. The court made no pertinent determination. The record does not contain evidence probative of such matters.

15

```
             U.S. Bankruptcy Appellate Panel
                   of the Ninth Circuit
       125 South Grand Avenue, Pasadena, California 91105
         Appeals from Central California   (626) 229-7220
         Appeals from all other Districts  (626) 229-7225
```

---------------------------
NOTICE OF ENTRY OF JUDGMENT
---------------------------

BAP No.: CC-05-1268-KPaB

RE:      NATHAN JOHNSON


A separate Judgment was entered in this case on JULY 7, 2006.


BILL OF COSTS:
--------------
Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1


ISSUANCE OF THE MANDATE:
------------------------
The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.


APPEAL TO COURT OF APPEALS:
---------------------------
An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing fee (effective April 9, 2006) and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

CERTIFICATE OF MAILING
-------------------------------------------------------------

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was mailed this date to all parties of record to this appeal.

By: Vincent J. Barbato
Deputy Clerk: July 7, 2006