**FILED**

JUL 07 2006

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-05-1268-KPaB |
| NATHAN JOHNSON, ) | Bk. No.   LA 05-14975-ER |
| ) | |
| Debtor. ) | |
| ——————————————— ) | |
| NATHAN JOHNSON, ) | |
| ) | |
| Appellant, ) | |
| ) | OPINION |
| v. ) | |
| ) | |
| TRE HOLDINGS LLC, ) | |
| ) | |
| Appellee. ) | |
| ——————————————— ) | |

Argued and Submitted on May 18, 2006
at Pasadena, California

Filed – July 7, 2006

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding.

Before: KLEIN, PAPPAS, and BRANDT, Bankruptcy Judges.

( 19 )

1 | KLEIN, Bankruptcy Judge:

2

3        Under 11 U.S.C. § 362(a), a bankruptcy petition "operates as

4 a stay" of certain actions against property of the debtor and of

5 the estate.  The underlying question is whether a court

6 nevertheless has inherent authority to preempt this statutory

7 "automatic stay" for future bankruptcy cases by way of a stay-

8 relief order that purports to have "in rem" effect.  Because we

9 conclude that a court does not have inherent (as opposed to

10 statutory) authority to trump future automatic stays with an "in

11 rem" order, the foreclosure sale giving rise to this dispute was

12 void ab initio.

13        We REVERSE the order declining to exercise jurisdiction over

14 appellant's claim of stay violation and REMAND for further

15 proceedings, expressing no view regarding the merits of the

16 parties' mutual recriminations or whether the circumstances of

17 appellant's facially dubious bankruptcy strategy would warrant

18 annulling the automatic stay.

19

20                              FACTS

21      Appellant Nathan Johnson filed a chapter 13 case on March

22 14, 2005.  His property interests included an undivided one-half

23 interest in real property in Los Angeles, California, that he had

24 acquired by a grant deed recorded one hour before filing the

25 bankruptcy.  The grantor, Turmeko Properties, Inc. ("Turmeko"),

26 had a 100 percent interest at the time of transfer and contends

27 the consideration was securing repayment of a prior loan.

28      Without seeking relief from the automatic stay in Johnson's

1 | bankruptcy case, TRE Holdings, LLC ("TRE"), caused a trustee's

2 | (nonjudicial foreclosure) sale to be held on March 21, 2005, at

3 | which TRE purchased the property.

4 |     On April 8, 2005, Johnson moved for stay-violation sanctions

5 | under § 362(h) and an order vacating the trustee's sale.

6 |     TRE responded that it was entitled to ignore the automatic

7 | stay by the terms of a stay relief order entered in the earlier

8 | bankruptcy of Maureen Grimes, who then owned an undivided one-

9 | half interest with Turmeko.  That order purportedly granted stay

10 | relief for 180 days in any bankruptcy involving the property:

11 |     This order is binding and effective in any bankruptcy
    case commenced by or against any successors,

12 |     transferees, or assignees, of the above-named Debtor(s)
    for a period of 180 days from the hearing of the Motion

13 |     . . . upon recording of a copy of this Order or giving
    appropriate notice of its entry in compliance with

14 |     applicable non-bankruptcy law.

15 | In re Grimes, No. LA 04-35666 (Bankr. C.D. Cal. Jan. 6, 2005).

16 |     TRE contended that Johnson was successor to the Grimes one-

17 | half interest that had been transferred back to Turmeko.  Johnson

18 | and Turmeko countered that he received the other one-half

19 | interest, which Turmeko owned throughout the Grimes bankruptcy.

20 |     TRE also asserted that the foreclosure sale had been delayed

21 | by multiple bankruptcy filings involving transfers of fractional

22 | interests in the property for no consideration.

23 |     Turmeko countered with assertions (which the procedural

24 | posture of this appeal requires us to accept as true) that:  the

25 | consideration for the transfer to Johnson was to secure a prior

26 | loan; TRE defied a state-court order to provide a payoff amount

27 | for purposes of refinance for so long that a loan commitment to

28 | Turmeko expired; and TRE ultimately made a materially inflated

1 | payoff demand for nearly triple the amount borrowed.

2 | The bankruptcy court dismissed the case for procedural

3 | defects before Johnson's stay-violation motion was scheduled to

4 | be heard.  All pending motions were dismissed as moot.

5 | The court later revived the stay violation motion on

6 | Johnson's application, which pointed out that stay violation

7 | disputes are not necessarily mooted by the dismissal of a case.

8 | The court ultimately denied the motion after a hearing,

9 | concluding that it lacked jurisdiction and, to the extent it had

10 | discretion to take jurisdiction, declining to exercise any such

11 | discretion.  In doing so, the court reasoned that the motion

12 | sought "new relief" in a dismissed case.

13 | Johnson timely appealed.

14 |

15 | JURISDICTION

16 | The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334

17 | and 157(b).  We have jurisdiction under 28 U.S.C. § 158(a)(1).

18 |

19 | ISSUES

20 | 1.  Whether a bankruptcy court is entitled to decline to

21 | exercise jurisdiction over a dispute regarding the automatic stay

22 | imposed by 11 U.S.C. § 362.

23 | 2.  Whether an order granting relief from stay in a previous

24 | bankruptcy case operated to preclude the automatic stay from

25 | arising in the instant case in regards to the same property.

26 |

27 | STANDARDS OF REVIEW

28 | The existence of subject-matter jurisdiction, the scope of a

4

1   bankruptcy court's inherent authority, and the scope of its power

2   to act under 11 U.S.C. § 105, are questions of law that we review

3   de novo.  Yadidi v. Herzlich (In re Yadidi), 274 B.R. 843, 847

4   (9th Cir. BAP 2002) (court authority); Davis v. Courington (In re

5   Davis), 177 B.R. 907, 910-11 (9th Cir. BAP 1995) (jurisdiction).

6        Since the court denied the motion on jurisdictional grounds

7   without reaching the merits, we must assess the facts in the

8   light most favorable to appellant.  Fed. R. Civ. P. 12(b)(6);

9   Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006).

10

11                          DISCUSSION

12       Let there be no mistake.  Appellant is on thin ice because

13   participating in a strategy of transferring fractional interests

14   for the purpose of filing successive bankruptcy cases that are

15   then not completed is unacceptable and may constitute a crime.

16   Conversely (accepting, as we must, factual allegations about

17   appellee in the light favorable to appellant), a creditor should

18   not be permitted to sabotage a refinance so that it can

19   foreclose.  Our task, however, is to focus on the law, even as

20   between unsympathetic parties.

21       Although Congress, in the 2005 Bankruptcy Amendments,

22   addressed the problem of repetitive bankruptcies connected with

23   transfers of real property by enacting a new exception to the

24   automatic stay for "in rem" orders that meet specific criteria,[1]

25   _____

26   [1] As set forth in part II-B of this opinion, Congress
     created a new automatic stay exception as § 362(b)(20), which,
27   with an escape clause for changed circumstances or other good
     cause, excepts from the automatic stay real property lien
28   enforcement actions for a period of two years after the entry of
     an order in a prior case that complies with new § 362(d)(4),
                                              (continued...)

1 │ those amendments do not apply to this appeal.

2 │       Nor, in any event, would the "in rem" order in this instance

3 │ pass muster under the 2005 Amendments.  There was no finding of

4 │ an intent to hinder, delay, and defraud creditors and no

5 │ opportunity to establish changed circumstances or other cause.

6 │       Hence, we must decide whether, in the absence of (or

7 │ compliance with) the newly-enacted scheme, the "in rem" feature

8 │ of the Grimes stay relief order entitled TRE to ignore the

9 │ automatic stay in Johnson's case.  This boils down to the

10 │ question of the inherent authority of the bankruptcy court.

11 │

12 │                                   I

13 │       The basic law regarding automatic stay violations in this

14 │ circuit straightforwardly renders acts in violation of the stay

15 │ void ab initio.

16 │

17 │                                   A

18 │       An automatic stay is created upon the filing of the case.

19 │ 11 U.S.C. § 362(a).  A sale in violation of the automatic stay is

20 │ void ab initio.  Schwartz v. United States (In re Schwartz), 954

21 │ F.2d 569, 571 (9th Cir. 1992).  This is true even if the case is

22 │ later dismissed as a bad faith filing.  40235 Washington St.

23 │ Corp. v. Lusardi, 329 F.3d 1076, 1080 (9th Cir. 2003), cert.

24 │ denied, 540 U.S. 983 (2003).  After the case is dismissed, the

25 │
_____

26 │      [1](...continued)
which must be predicated upon specific findings that the filing
of the petition in the prior case was part of a scheme to delay,
27 │ hinder, and defraud creditors that involved either transfer of
all or fractional ownership without permission or the filing of
28 │ multiple bankruptcy cases.  11 U.S.C. §§ 362(b)(20) & (d)(4)
(2006).

6

1  court may annul the automatic stay, thereby retroactively

2  ratifying an act otherwise violative of the stay. Id., at 1080

3  n.2; Davis, 177 B.R. at 911. The court may also impose sanctions

4  for stay violations, even if it annuls the stay. Williams v.

5  Levi (In re Williams), 323 B.R. 691, 702 (9th Cir. BAP 2005).

6       Thus, since the sale at issue occurred while the stay was in

7  effect and occurred without the benefit of relief from stay, the

8  sale is void unless the "in rem" feature of the Grimes order

9  dictates a contrary result.

10

11                                    B

12       The court's conclusion that it was being asked to grant "new

13  relief" over which it would decline to exercise jurisdiction was

14  incorrect as to the nature of the relief sought and as to its

15  ability to decline to exercise jurisdiction.

16

17                                    1

18       No order vacating the sale was required because, as a matter

19  of law, the sale was void, unless and until the bankruptcy court

20  acted to annul the automatic stay. Hence, the relief requested

21  in the form of declaring that the sale was void was not "new"

22  relief. Rather, it was relief that automatically followed from

23  the existence of the stay violation. Lusardi, 329 F.3d at 1080.

24

25                                    2

26       Similarly, it is settled that a bankruptcy court continues

27  to have jurisdiction to annul the stay and to impose sanctions

28  for stay violations. Lusardi, 329 F.3d at 1080; Davis, 177 B.R.

1  907, 911 (9th Cir. BAP 1995); Williams, 323 B.R. at 702.

2      Nor can the court's expression of refusal to exercise any

3  discretion that it may have to "extend jurisdiction" be construed

4  as discretionary abstention under 28 U.S.C. § 1334(c)(1).[2]  The

5  court made none of the findings necessary to establish a

6  predicate — interest of justice, comity with state courts, or

7  respect for state law — for such abstention.

8      Basic federal jurisdiction jurisprudence requires that a

9  court with jurisdiction must exercise such jurisdiction when

10  asked to do so.  See, e.g., Colo. River Water Conservation Dist.

11  v. United States, 424 U.S. 800, 813 (1976).  This common-law rule

12  applies in bankruptcy, albeit that it has been softened by a

13  statutory grant of broad bankruptcy abstention authority.  Swift

14  v. Bellucci (In re Bellucci), 119 B.R. 763, 774-77 (Bankr. E.D.

15  Cal. 1990) (nonstatutory abstention doctrines apply in

16  bankruptcy); 11 U.S.C. § 305 (abstention from entire case); 28

17  U.S.C. § 1334(c) (abstention from bankruptcy proceedings).

18      Where a bankruptcy court has jurisdiction but is not in a

19  position to avail itself of statutory or nonstatutory abstention,

20  it must exercise its jurisdiction.  An automatic stay violation

21  dispute is such an instance.  Hence, the bankruptcy court erred

22  _____

23      [2]  The discretionary abstention statute provides:

24          (c)(1) Except with respect to a case under chapter 15
        of title 11, nothing in this section prevents a district
25      court in the interest of justice, or in the interest of
        comity with State courts or respect for State law, from
26      abstaining from hearing a particular proceeding arising
        under title 11 or arising in or related to a case under
27      title 11.

28
    28 U.S.C. § 1334(c)(1) (2006) (reference to chapter 15 added by
    2005 Amendments).

                                8

1  when it ruled that it would decline to exercise jurisdiction.

2

3                                    II

4      The question becomes whether the "in rem" feature of the

5  Grimes stay relief order entitled TRE to ignore the automatic

6  stay in the Johnson bankruptcy case.

7      TRE contends that the automatic stay either did not exist or

8  had been vacated in advance of the filing of the case by the

9  bankruptcy judge in the Grimes case, whose order stated that it

10  was "binding and effective in any bankruptcy case commenced by or

11  against successors, transferees, or assignees of Grimes for a

12  period of 180 days from the hearing of the motion upon recording

13  a copy of this order or giving appropriate notice of its entry in

14  compliance with applicable nonbankruptcy law."

15      The threshold question is whether the Grimes bankruptcy

16  court had authority to outlaw the statutory automatic stay in a

17  future bankruptcy case.  Since we answer the initial question in

18  the negative, we need not parse the details of the actual

19  transaction so as to be able to answer the question whether the

20  terms of the Grimes "in rem" order actually covered Johnson.

21

22                                    A

23      The narrow question is whether the "in rem" order entered by

24  the Grimes bankruptcy court was effective in the later Johnson

25  bankruptcy case to trump the provision in § 362(a) that "a

26  petition filed . . . operates as a stay, applicable to all

27  entities" of acts against the debtor or property of the estate.

28      The foundational proposition is that nothing in § 362, as it

                                    9

1   existed before October 17, 2005, expressly authorized an "in rem"

2   stay relief order.

3       The nature of an automatic stay determination is that it is

4   merely an adjustment of a statutory injunction in which the court

5   does not definitively determine interests in property.   11 U.S.C.

6   § 362.

7       Under the Federal Rules of Bankruptcy Procedure, the

8   determination of interests in property requires an adversary

9   proceeding.   FED. R. BANKR. P. 7001(2).   Thus, in a relief from

10  stay motion that is a Rule 9014 contested matter, not a Rule 7001

11  adversary proceeding, the bankruptcy court is not authorized by

12  the rules of procedure to enter an "in rem" order that determines

13  interests in property.   GMAC Mortgage Corp. v. Salisbury (In re

14  Loloee), 241 B.R. 655, 661-62 (9th Cir. BAP 1999).

15      When bankruptcy courts have entered "in rem" orders they

16  usually have based their authority to enter such orders for in

17  rem relief pursuant to 11 U.S.C. § 105.   E.g., County of Fresno

18  v. Golden State Capital Corp. (In re Golden State Capital Corp.),

19  317 B.R. 144, 149 (Bankr. E.D. Cal 2004); Kimberly L. Nelson,

20  Abusive Filings:   Can Courts Stop the Abuse within the Confines

21  of the Bankruptcy Code?, 17 BANKR. DEV. J. 331, 346-47 (2000).

22      Bankruptcy Code § 105, however, does not provide such

23  authority.   We have previously explained that § 105 is not a

24  roving commission to do equity or to do anything inconsistent

25  with the Bankruptcy Code.   Yadidi, 274 B.R. at 848.

26      The nature of the jurisprudential foundation of § 105 is a

27  complex subject that has proven difficult to corral.   Professors

28  Nickles and Epstein argue that § 105 adds nothing as a source of

10

1  supplemental law and is merely a recognition of the nonstatutory

2  inherent, common-law powers to interpret statutes interstitially

3  and of equitable powers that already repose in courts.  Thus,

4  they assert that any construction of § 105 as an independent

5  source of authority to make law risks crossing the fuzzy boundary

6  between legitimate judicial interpretation and unconstitutional

7  exercise of legislative powers. Steve H. Nickles & David G.

8  Epstein, Another Way of Thinking About Section 105(a) & Other

9  Sources of Supplemental Law Under the Bankruptcy Code, 2000

10  CHAPMAN L. REV. 7, 9-10 (2000); Yadidi, 274 B.R. at 848.

11       Regardless of the ultimate outcome of the debate about the

12  nature of § 105 and the ultimate demarcation of the true

13  perimeter of legitimate exercise of whatever authority it

14  recognizes, we adhere to the limiting propositions that § 105 is

15  not a roving commission to do equity or to do anything

16  inconsistent with the Bankruptcy Code.  Norwest Bank Worthington

17  v. Ahlers, 485 U.S. 197, 206 (1988) (equity powers); Resorts

18  Int'l, Inc. v. Lowenschuss (In re Lowenschuss), 67 F.3d 1394,

19  1402 (9th Cir. 1995); Am. Hardwoods, Inc. v. Deutsche Credit

20  Corp. (In re Am. Hardwoods, Inc.), 885 F.2d 621, 624-26 (9th Cir.

21  1989); Bear v. CoBen ( In re Golden Plan of Cal., Inc.), 829 F.2d

22  705, 713 (9th Cir.1986); Yadidi, 274 B.R. at 848.

23       Moreover, the language of § 105 fixes the limit at measures

24  "necessary or appropriate to carry out the provisions of" the

25  Bankruptcy Code, which is where our inquiry begins.  Golden Plan,

26  829 F.2d at 713; Yadidi, 274 B.R. at 848.

27       Considering that the § 105 limit is to measures necessary or

28  appropriate to carry out "the provisions of the Bankruptcy Code,"

1  the fundamental problem is that it is difficult to characterize

2  an "in rem" order as carrying out the provisions of the

3  Bankruptcy Code.  An "in rem" order is more than filling in the

4  interstices, which § 105 does not authorize.  Cf. Yadidi, 274

5  B.R. at 848.  It follows that decisions grounding "in rem" orders

6  on § 105 are not persuasive.

7       In the absence of a statutory basis for an "in rem" order,

8  the question of the binding effect of an order like the Grimes

9  order is a topic in the federal common law of claim and issue

10  preclusion.  The basic rules are set forth in Restatement

11  (Second) of Judgments §§ 30, 43-44, 54.  See generally,

12  Christopher Klein, et al., Principles of Preclusion & Estoppel in

13  Bankruptcy Cases, 79 Am Bankr. L.J. 839 (2005).

14       In an adversary proceeding to determine an interest in

15  property, the court arguably would have authority to issue an

16  order that would operate as an "in rem" order under the rules of

17  res judicata.  Here, however, there is no adversary proceeding

18  and no adversary proceeding judgment that might have claim or

19  issue preclusive effect.  It follows that the Grimes order does

20  not have binding effect on nonparties and is not conclusive as to

21  interests in the property.

22

23                                   B

24       Our analysis is informed by what Congress did in 2005, when

25  it enacted an amendment to § 362 that authorizes a stay relief

26  order to have effect in other cases when the court determines

27  that the filing of the petition was part of a scheme to hinder,

28  delay, and defraud creditors.  The new § 362(d)(4) provides:

                                   12

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. 362(d)(4) (2006).

Such an order is effectuated in a subsequent bankruptcy case by qualifying for a statutory exception to the automatic stay in the later case pursuant to the new § 362(b)(20):

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay —

(20) under subsection (a), of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing[.]

11 U.S.C. § 362(b)(20) (2006).

It is apparent that the Grimes "in rem" order would not

1   surmount the hurdles erected by new §§ 362(b)(20) and (d)(4).

2   The Grimes court did not determine that the filing of the

3   petition was part of a scheme to delay, hinder, and defraud

4   creditors.  Nor, in either the Grimes or the Johnson court, was

5   there an opportunity to establish changed circumstances or other

6   cause.  In other words, even under the post-2005 regime, the

7   Grimes order would not be effective in the Johnson case.

8        The structure of what Congress deemed it necessary to do in

9   the post-2005 regime embodied by §§ 362(b)(20) and (d)(4)

10  confirms the validity of our conclusion that the pre-2005 Code

11  did not authorize an "in rem" stay relief order to trump the

12  automatic stay in future cases.

13       There is no dysfunction in concluding that the Grimes order

14  did not trump the initiation of the stay upon the commencement of

15  the Johnson bankruptcy case and did not excuse TRE from obtaining

16  relief from stay.  In addition to the possibility of having the

17  stay annulled as suggested by the Ninth Circuit in Lusardi, the

18  Bankruptcy Code has always included an emergency stay relief

19  provision at § 362(f), permitting relief without a hearing where

20  needed to avoid irreparable damage.  TRE made no attempt to avail

21  itself of this procedure.

22       It follows that the Grimes order did not entitle TRE to

23  ignore the automatic stay in the Johnson bankruptcy case.[3]

24  _____

25       [3]  Since the order is not effective in the first instance,
    we need not reach the question of whether the Grimes "in rem"
26  order would have been actually effective in this instance.  The
    answer to that question would depend upon whether Johnson, as
27  transferee of Turmeko, was a "successor" of Grimes.  We note,
    however, that there is ambiguity as to which 50 percent interest
28  was transferred to Johnson.  The transferor, Turmeko, says that
                                                    (continued...)

CONCLUSION

The court applied an incorrect legal standard when it reasoned that it lacked jurisdiction over the stay violation dispute. Since the Grimes order did not entitle TRE to ignore the automatic stay, the TRE foreclosure sale, in the current procedural posture of the dispute, was void ab initio as a matter of law. On remand, the court will be entitled to consider all available measures, including annulling the automatic stay. Accordingly, we REVERSE and REMAND.

---

[3](...continued)
it was the 50 percent that was not owned by Grimes. The court made no pertinent determination. The record does not contain evidence probative of such matters.